CEVIGNEY v ECONOMY FIRE & CASUALTY COMPANY

Docket No. 124651. Submitted May 16, 1990, at Marquette. Decided
    August 22, 1990. Leave to appeal applied for.

 Eric J. and Ann Marie Beerling were residents of Wisconsin
    whose automobile was insured by Economy Fire & Casualty
    Company when, on October 16, 1988, Ann Marie Beerling died
    and Eric Beerling sustained serious injury in an automobile
    accident in Marquette County, Michigan. Gert A. Cevigney, as
    personal representative of Ann Marie Beerling's estate, and
    Eric Beerling sought payment by Economy of personal protec-
    tion insurance benefits under Michigan's no-fault act. Economy
    refused payment, contending that it had withdrawn from the
    Michigan Insurance Bureau its written certification pursuant
    to § 3163 of the no-fault act, MCL 500.3163; MSA 24.13163, that
    any accidental bodily injury or property damage occurring in
    Michigan arising from the ownership, operation, maintenance
    or use of a motor vehicle as a motor vehicle by a non-Michigan
    resident who is insured under Economy's automobile insurance
    policy shall be subject to the personal and property protection
    insurance system set forth in the no-fault act. Cevigney and
    Eric Beerling brought an action against Economy in the Mar-
    quette Circuit Court, which granted summary disposition in
    Economy's favor, Edward A. Quinnell, J. Plaintiffs appealed.

 The Court of Appeals *held:*

 Although the no-fault act is silent as to withdrawal of an
    insurer's certificate filed pursuant to § 3163, the Insurance
    Bureau, in letters to defendant insurer in this case, had ac-
    knowledged that a written request for withdrawal of the certifi-
    cate is all that is required for decertification. Such a request
    was made by defendant in December, 1985. Thus, defendant
    had withdrawn its certificate by the time the Beerlings had
    their accident and defendant is not liable to plaintiffs for
    personal protection insurance benefits under the no-fault act.

 Affirmed.

REFERENCES

Am Jur 2d, Automobile Insurance § 341.
See the Index to Annotations under Foreign Corporations; No-Fault
    Insurance.

INSURANCE — NO-FAULT — FOREIGN INSURERS — CERTIFICATION.
An insurer which is authorized to transact automobile liability insurance and personal and property protection insurance in Michigan and which has filed a certificate of compliance with the Michigan no-fault act in case of bodily injury or property damage to its non-Michigan resident insureds arising from automobile accidents occurring in Michigan effectively withdraws such certification upon filing a written request for withdrawal with the Insurance Commissioner (MCL 500.3163; MSA 24.13163).

*Wisti & Jaaskelainen, P.C.* (by *Mikael G. Hahner* and *Mark A. Wisti*), for plaintiffs.

*Weber, Swanson & Dettmann* (by *Darrell R. Dettmann*), for defendant.

Before: CYNAR, P.J., and WEAVER and GRIFFIN, JJ.

GRIFFIN, J. Today we are asked to revisit our recent decision in *Safeco Ins Co v Economy Fire & Casualty Co,* 182 Mich App 552; 452 NW2d 874 (1990). In doing so, we affirm its holding, but on the basis of documentation not presented to the *Safeco* panel, we reach the opposite result.

I

In *Safeco, supra,* we held that the defendant's certificate of Michigan no-fault automobile insurance was not automatically revoked by defendant's decision in 1983 to cease its underwriting of no-fault automobile insurance in Michigan. We stated that the relevant statutory provision, MCL 500.3163; MSA 24.13163, "makes no reference to or provision for automatic termination of certification in the event authorization to write auto insurance in Michigan is withdrawn." *Safeco, supra* at 556.

Section 3163 in its entirety states the following:

(1) An insurer authorized to transact automobile liability insurance and personal and property protection insurance in this state shall file and maintain a written certification that any accidental bodily injury or property damage occurring in this state arising from the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle by an out-of-state resident who is insured under its automobile liability insurance policies, shall be subject to the personal and property protection insurance system set forth in this act.

(2) A nonadmitted insurer may voluntarily file the certification described in subsection (1).

(3) When a certification filed under subsections (1) or (2) applies to accidental bodily injury or property damage, the insurer and its insureds with respect to that injury or damage have the rights and immunities under this act for personal and property protection insureds, and claimants have the rights and benefits of personal and property protection insurance claimants, including the right to receive benefits from the electing insurer as if it were an insurer of personal and property insurance applicable to the accidental bodily injury or property damage.

As we noted in *Safeco, supra,* until its certificate of Michigan no-fault automobile insurance was withdrawn, defendant's out-of-state auto insurance policies were more marketable because of their Michigan no-fault automobile coverages. On the basis of this benefit, we rejected defendant's argument that its Michigan no-fault automobile certificate was impliedly withdrawn when it terminated its authorization to write automobile insurance in Michigan:

Thus, we see no reason to conclude that the Legislature intended an out-of-state insurer, such

as defendant here, to have the unilateral option to either rely on or render void its properly filed and maintained no-fault certification depending on whether in a particular situation the provisions of the no-fault act work to its benefit or subject it to liability. [*Safeco, supra* at 557.]

Left unresolved in *Safeco, supra,* was the method for withdrawal of the Michigan no-fault automobile insurance certificate for companies who no longer do business in Michigan and who do not wish to afford their nonresident insureds with the benefits of Michigan no-fault insurance for accidents occurring within our state. The documentation furnished us on this issue was simply not presented to the *Safeco* panel. After considering such documentation, we reach a result different from, but not inconsistent with, *Safeco.* From such an exercise, we are again reminded that the quality of the justice we dispense is directly related to the quality of the advocacy.

II

On October 16, 1988, Wisconsin residents Ann Marie Beerling and Eric J. Beerling were involved in a tragic automobile accident in Marquette County, Michigan, which resulted in the death of Ann Marie Beerling and serious personal injuries to Eric J. Beerling.

The Beerlings were insured with a policy of Wisconsin automobile insurance written by Economy Fire & Casualty Company. Mr. Beerling and Gert A. Cevigney, as personal representative of Ann Marie Beerling's estate, filed a claim for Michigan no-fault automobile personal protection insurance benefits with Economy. After Economy refused to pay Michigan no-fault benefits, Cevigney and Beerling filed suit in the Marquette Cir-

cuit Court. Both parties thereafter filed motions for summary disposition under either MCR 2.116(C)(8) or MCR 2.116(C)(10).

Marquette Circuit Judge Edward A. Quinnell, after reviewing numerous documents and correspondence, ruled that defendant's certificate of Michigan no-fault automobile insurance was effectively revoked by operation of an amended certificate of authority issued by the Michigan Insurance Commissioner on July 19, 1983. Although we disagree, we nevertheless conclude that defendant's Michigan no-fault automobile insurance certificate was withdrawn prior to the October 16, 1988, automobile accident and therefore affirm.

### III

On October 1, 1973, defendant executed and filed with the Insurance Commissioner a Michigan no-fault automobile insurance certification form pursuant to § 3163. This no-fault insurance certificate, inter alia, granted defendant's nonresident insureds Michigan no-fault automobile insurance coverage for automobile accidents occurring within the State of Michigan. Also on file at the Insurance Commissioner's office was a certificate of authority issued by the commissioner to the defendant which authorized the defendant to write certain lines of insurance in Michigan.

The saga of defendant's painstaking efforts to withdraw its insurance business from the State of Michigan commenced in 1983. In that year, defendant requested that its general certificate of authority to write insurance be amended to delete its previous authorization to write Michigan automobile insurance. The request was granted by the Insurance Commissioner on July 19, 1983, and a new certificate of authority was issued which au-

thorized defendant to write certain lines of insurance in Michigan excluding automobile and workers' compensation. Defendant did not request in 1983 that its certificate of no-fault insurance be withdrawn.

In December, 1985, defendant decided to discontinue writing all lines of insurance within the State of Michigan. Pursuant to a December 12, 1985, letter entitled "WITHDRAWAL OF FORMS," defendant's president notified the Insurance Commissioner that defendant "hereby withdraws from filing for approved use with the insurance bureau *any and all* insurance policy forms, riders, applications, endorsements, or *certificates,* effective for all new business beginning January 1, 1986, and for all renewals of in force policies beginning March 1, 1986."

The Insurance Bureau thereafter in letters dated December 15, 1987, and December 29, 1987, resisted the withdrawal of defendant's Michigan no-fault automobile insurance certificate. However, the later letter acknowledged: "there are no forms necessary to process decertification. All that is required is a written request."

On July 17, 1989, the special deputy insurance commissioner finally honored defendant's withdrawal of its no-fault certificate:

July 17, 1989

Mr. R. E. Ostgulen
Secretary/Operations
Underwriting Manger
The Economy Companies
500 Economy Court
Freeport, Illinois 61032

Re:   Economy Fire & Casualty Insurance Company
        Michigan Certification Form
        Section 3163 Certification Pursuant to
          the Michigan No-Fault Law

Dear Mr. Ostgulen:

This letter is in regard to the withdrawal of Economy Fire & Casualty Insurance Company's Section 3163 No-Fault Certification form.

Your request to have this certification form withdrawn has been honored. The effective date of this withdrawal is September 1, 1989. We cannot return the original certification back to you, as there may be injured parties who need evidence that a certification was in place prior to the withdrawal effective date. However, we have enclosed a copy of the original certification.

We do feel that this withdrawal places your policyholders at a disadvantage when traveling in Michigan and would appreciate an effort on your part to advise them of the potential lawsuits they may encounter without the right to sue a properly insured Michigan driver.

                    Sincerely,

                    Ronald C. Hempsted
                    Special Deputy Commissioner

Enclosure

IV

The dispute in the instant case centers on whether defendant's no-fault certificate filed pursuant to § 3163 was still valid at the time of the Beerlings' October 16, 1988, automobile accident. If it was, defendant is obligated to pay plaintiffs' Michigan no-fault benefits. If not, defendant does not have to pay these benefits, but must pay only whatever insurance benefits are required by its policy. See § 3163.

On the basis of the documentary evidence presented to the trial judge in this matter, we agree that reasonable minds could not differ and that, at the time of the Beerlings' accident, defendant's Michigan no-fault certificate had been withdrawn. On December 12, 1985, defendant's president by

letter to the Insurance Commissioner specifically revoked all insurance certificates. The certification pursuant to § 3163 clearly falls within this definition. As noted by the December 15, 1987, and December 29, 1987, letters to defendant from the Insurance Bureau, for decertification "all that is required is a written request." Thus, we hold that defendant effectively withdrew its § 3163 no-fault certification form on December 12, 1985, and is therefore not liable to plaintiffs for the Michigan no-fault automobile insurance claimed.

The Insurance Commissioner inexplicably placed an effective date of September 1, 1989, on defendant's withdrawal of its no-fault certificate. The Insurance Commissioner is empowered to promulgate rules and regulations as he deems necessary to effectuate the purposes and to execute and enforce the provisions of the insurance laws of this state. MCL 500.210; MSA 24.1210; *DAIIE V Comm'r of Ins,* 119 Mich App 113, 117; 326 NW2d 444 (1982), lv den 417 Mich 1077 (1983). When an agency is empowered to make rules, a three-part test is used to determine the validity of the rules it promulgates. *Nolan v Dep't of Licensing & Regulation,* 151 Mich App 641, 647; 391 NW2d 424 (1986); *Luttrell v Dep't of Corrections,* 421 Mich 93, 100; 365 NW2d 74 (1984), reh den 422 Mich 1201 (1985). The rules must be within the matter covered by the enabling statute, they must comply with the underlying legislative intent, and they must not be arbitrary and capricious. *Nolan, supra; Luttrell, supra.*

In the instant case, the Insurance Commissioner promulgated a rule that, for an insurance company to withdraw its § 3163 no-fault certification, all that is required is a written request. It necessarily follows that the withdrawal of the no-fault certificate must be promptly honored after such a

request. We find the commissioner's failure to do so for almost four years to be most arbitrary and capricious.

Affirmed.